UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

– against –

GEORGE DEJESUS,

Defendant.

OPINION & ORDER

6 Cr. 12 (ER)

RAMOS, D.J.:

George DeJesus is currently serving a 360-month sentence, which Judge William H. Pauley III imposed on September 28, 2007, at FCI Fairton in New Jersey, and according to Bureau of Prisons ("BOP") records, he is scheduled to be released in May of 2032.  Before the Court is his *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c).  Doc. 97.  The Government opposes the motion.  For the reasons set forth below, DeJesus' motion is GRANTED.

I.     BACKGROUND

A.  Prior Proceedings

On June 21, 2006, a jury in the Southern District of New York found DeJesus guilty on one count of conspiracy to distribute heroin and one count of using and carrying a firearm in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 846 and 18 U.S.C. § 924(c).  *See* Docs. 1, 20; June 21, 2006 Jury Verdict.  DeJesus, born in June 1982, was 19 years old in 2001 when he became involved in the heroin trafficking organization for which he was convicted.  *See* Doc. 36-2 at 6–7.  The superseding indictment, filed June 8, 2006, charged DeJesus, a/k/a Georgito, with conspiring to distribute one kilogram and more of a mixture containing heroin from October 2001 through December 2003.  *See* Doc. 20.  Although he was young, DeJesus played a major role in the organization:  in approximately 2001, DeJesus and others threatened co-conspirators with violence in attempt to recover heroin believed to be stolen, and in approximately May 2002,

DeJesus oversaw the work of other co-conspirators packaging heroin at a stash house in the Bronx. *Id.* Also in May 2002, DeJesus directed a co-conspirator to retrieve a revolver that was brandished in the course of a drug-related confrontation. *Id.* At trial, the jury found DeJesus guilty of conspiring to distribute one kilogram and more of heroin, and of possessing, but not brandishing, a firearm. Doc. 106 at 1.

The government also filed a prior felony information, indicating that in September 1999, DeJesus had been convicted of attempted criminal sale of a controlled substance in the third degree, in violation of New York Public Law § 220.39, and therefore was subject to enhanced penalties under 21 U.S.C. § 841(b)(1)(A), which at the time increased the mandatory minimum sentence for the narcotics conspiracy from ten years to twenty years.[1] Doc. 8. In 1999, when DeJesus was 17, he had attempted to sell two glassines of heroin to an undercover New York City Police Department ("NYPD") officer. Doc. 106 at 2.

On September 28, 2007, Judge Pauley sentenced DeJesus to 300 months' imprisonment for the drug charge and 60 months' imprisonment for the firearm charge, to be served consecutively. See September 28, 2007 Minute Entry; Doc. 43. According to the pre-sentence report, the evidence established that DeJesus led a drug trafficking organization that sold hundreds of bags of heroin on a daily basis. Doc. 106 at 2. At the sentencing, Judge Pauley remarked that there was "overwhelming evidence" that "DeJesus was a leader and organizer of that vast and long-running heroin distribution enterprise on Boynton Avenue" in the Bronx. Doc. 106 at 2–3. Based on the quantity of heroin

---

[1] As the Second Circuit Court of Appeals recognized in dismissing DeJesus' appeal, the prior felony conviction was replaced by a youthful offender adjudication, and he served only a term of probation. *United States v. DeJesus,* 314 F. App'x 386, 389 (2d Cir. 2009). In its 2009 decision, the Second Circuit found this distinction to be meaningless since the youthful offender adjudication was a prior "felony drug offense" under § 841(b)(1)(A). *Id.* (citing *United States v. Jackson*, 504 F.3d 250, 253 (2d Cir. 2007)). With the passage of the First Step Act, as described in more detail below, Congress amended § 841(b)(1)(A) to provide a mandatory minimum of 15, rather than 20 years, and to encompass only prior convictions for a "serious drug felony or serious violent felony." 21 U.S.C. § 841(b)(1)(A). As such, youthful offender adjudications no longer qualifying as prior felonies for the purposes of sentence enhancement under § 841(b)(1)(A).

involved, Judge Pauley calculated the Guidelines range to be 30 years' to life imprisonment for Count One, with a mandatory minimum penalty of 20 years based on DeJeus' prior narcotics offense, to be followed by a mandatory, consecutive term of imprisonment of 5 years for Count Two. Doc. 106 at 3. However, Judge Pauley determined that a downward variance from the Guidelines "was warranted so that DeJesus would have some portion of his life to make a contribution to society on his release." *DeJesus v. United States*, No. 06 Cr. 12 (WHP), 2017 WL 6343678, at *1 (S.D.N.Y. Dec. 11, 2017), *aff'd,* 757 F. App'x 39 (2d Cir. 2018).

### B. Post-Trial Appeals and Motions

On October 3, 2007, DeJesus filed a timely notice of appeal of both his conviction and sentence. The Second Circuit affirmed the judgment of conviction, but remanded for resentencing in light of *United States v. Williams*, 558 F.3d 166 (2d Cir. 2009), *cert. granted, judgment vacated*, 562 U.S. 1056 (2010), and *abrogated by Abbott v. United States*, 562 U.S. 8 (2010) (holding five-year mandatory minimum sentence for possession of a firearm in furtherance of a drug trafficking crime did not apply where a defendant was subject to ten-year mandatory minimum for the drug trafficking offense arising out of the same criminal transaction as the firearm offense). *U.S. v. DeJesus*, 314 F. App'x 386, 389 (2d Cir. 2009). DeJesus' motion for resentencing before the trial court was deemed moot after *Williams* was abrogated in light of the Supreme Court's decision in *Abbott v. United States*. *United States v. DeJesus*, No. 06 Cr. 12 (WHP), 2011 WL 5924351, at *2 (S.D.N.Y. Nov. 28, 2011), *aff'd,* 509 F. App'x 12 (2d Cir. 2013). DeJesus appealed Judge Pauley's denial of his motion for resentencing, which the Second Circuit affirmed. *United States v. DeJesus*, 509 F. App'x 12, 14 (2d Cir. 2013). His petition for a writ of certiorari to the Supreme Court was denied on October 7, 2013. *DeJesus v. United States*, 571 U.S. 947 (2013).

On approximately March 25, 2014, DeJesus filed a *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Doc. 60. DeJesus raised three claims:

3

(1) that resentencing was warranted under *Alleyne v. United States*, 570 U.S. 99, 113 (2013) (holding that any "fact that increases a sentencing floor . . . forms an essential ingredient of the offense"), because the trial court had not properly instructed the jury on its required findings as to drug quantity; (2) that trial counsel rendered ineffective assistance; (3) and that appellate counsel rendered ineffective assistance. *DeJesus v. United States*, No. 06 Cr. 12, 2017 WL 6343678, at *1 (S.D.N.Y. Dec. 11, 2017), *aff'd*, 757 F. App'x 39 (2d Cir. 2018). Judge Pauley appointed counsel for DeJesus and conducted an evidentiary hearing in January 2017. *Id.*; *see also* Doc. 85. On December 11, 2017, Judge Pauley denied the motion, finding that DeJesus had procedurally defaulted his *Alleyne* claim, and that his ineffective assistance of counsel claims were meritless. Specifically, Judge Pauley did not credit DeJesus' claim that his trial counsel had failed to communicate a five-year plea offer from the government to him. *Id.* at *4 ("DeJesus's trial counsel testified credibly to conveying the five-year offer and advising DeJesus to take it.") Judge Pauley also rejected all of DeJesus' other ineffective assistance claims as to both his trial and appellate counsel. *Id.* at *5–6. The Second Circuit affirmed Judge Pauley's decision on December 3, 2018. *DeJesus v. United States*, 757 F. App'x 39, 41–42 (2d Cir. 2018).

### C. The Instant Application

DeJesus submitted a request for a reduction in sentence under § 3582(c)(1)(A) pursuant to the First Step Act to the warden of FCI Fairton on June 9, 2020, arguing that extraordinary and compelling circumstances due to the pandemic and changes to sentencing laws warranted a reduction in this sentence. *See* Doc. 107. The request was denied on June 23, 2020. *See id.* He filed the instant motion for sentence reduction pursuant to the First Step Act and for compassionate release on March 2, 2021. Doc. 97. On March 12, 2021, the Probation Department issued a supplemental presentence report indicating that DeJesus was not eligible for a reduction in sentence under the First Step Act and the Fair Sentencing Act of 2010. Doc. 98. On March 31, 2021, DeJesus filed a

4

motion to clarify that his motion was for compassionate release rather than sentencing reduction.  Doc. 99.  On August 13, 2021, DeJesus' case was reassigned to this Court.  Doc. 100.  The Court thereafter set a briefing schedule.  Doc. 101.

In support of his motion, DeJesus has submitted multiple certificates for courses he has completed, a letter of support from his BOP corrections counselor, and a letter with an offer of employment.  *See* Doc. 96.

## II.     LEGAL STANDARD

### 18 U.S.C. § 3582

Although a court may not normally "modify a term of imprisonment once it has been imposed," there are certain limited exceptions, including "compassionate release." *See United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (internal quotation marks and citation omitted).  Under 18 U.S.C. § 3582, a court may reduce a prisoner's sentence when it finds that there are "extraordinary and compelling reasons" that warrant such a reduction, but one of two conditions must first occur:  Either the BOP Director may move the court to release the prisoner; or, alternatively, the prisoner himself may move the court, but only after he has fully exhausted all administrative rights.  *See* 18 U.S.C. § 3582(c)(1)(A).

Prior to the First Step Act, sole authority rested with the BOP to determine what reasons, for purposes of compassionate release, are "extraordinary and compelling."  *See* U.S.S.G. § 1B1.13 ("BOP Policy Statement"), Application Note 1(D).  The BOP Policy Statement includes as an "extraordinary and compelling" reason the existence of "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. 1(A)(ii)(I).  It also permits the Court to consider whether the incarcerated person "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  *Id.* at § 1B1.13(2).  However, the Second Circuit in *United States v. Brooker* recently

5

determined that "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *See* 976 F.3d 228, 237 (2d Cir. 2020). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Id.* at 237–38 (quoting 28 U.S.C. § 994(t)).

If the sentencing court finds that "extraordinary and compelling reasons" exist, it "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed; and the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a).

## III. DISCUSSION

### A. Exhaustion

The Government argues that DeJesus' motion must be denied because he has not exhausted his administrative remedies, as he did not argue that he made a motion to the BOP for compassionate release and he did not attach any application to his submission. Doc. 106 at 6. In response, DeJesus filed a letter "sending [the Court] a copy of proof that [he] did in fact take the proper procedure."[2] Doc. 107 at 1. The letter includes his request to BOP staff and handwritten letter to the warden dated June 9, 2020, indicating that he would like to apply for compassionate release or a reduction in sentence under § 3582(c)(1)(A), citing the First Step Act. *Id.* at 2–4. The disposition of the request, dated

---

[2] DeJesus' letter also indicates that he never received the government's opposition, which was sent by certified mail. *See* Docs. 106 at 8, 107 at 1. However, he writes that family members checked PACER and alerted him to the government's opposition. He evidently received the government's opposition in some form, as he has responded to their exhaustion argument.

6

June 23, 2020, denied the request because DeJesus did not meet the criteria for sentence reduction. *Id.* at 2.

Especially considering DeJesus' *pro se* status, the Court finds that the June 2020 request was sufficient for the purposes of exhaustion of his administrative remedies. While the June 2020 request was framed as seeking a sentence reduction rather than explicitly seeking compassionate release, courts do not require motions for compassionate release to be identical to requests to the BOP. *See, e.g.*, *United States v. Resnick*, 451 F. Supp. 3d 262, 269 (S.D.N.Y. 2020); *United States v. Gluzman*, No. 96 Cr. 323 (LJL), 2020 WL 4233049, at *11 (S.D.N.Y. July 23, 2020), *reconsideration denied*, No. 96 Cr. 323 (LJL), 2020 WL 6526238 (S.D.N.Y. Nov. 5, 2020) (same). Indeed, in some circumstances, courts have found waiver of the exhaustion requirement altogether to be warranted, based on the policies underlying the First Step Act "to increase the use and transparency of compassionate release." *United States v. Perez*, 451 F. Supp. 3d 288, 292–93 (S.D.N.Y. 2020) (quoting Pub. L. No. 115-391, 132 Stat. 5194 (2018)). Even if DeJesus had not complied with the formalities of exhausting his administrative remedies, the Court would grant the motion subject to DeJesus exhausting his administrative remedies. *See United States v. Robles,* 553 F. Supp. 3d 172, 175 (S.D.N.Y. 2021).

### B. Extraordinary and Compelling Circumstances

DeJesus' submission argues that the passage of the First Step Act, the effects of the COVID-19 pandemic, and his efforts "over the past . . . years to completely change the young man that was sentenced that day," warrant compassionate release. Doc. 97 at 2–3. He has also submitted a December 2016 letter from his correctional counselor noting that he is a "model inmate" and "prepared for positive reentry into society"; nine certificates for various courses and licensing, including obtaining his G.E.D. and completing a commercial driver's license course; and a letter indicating that there is a full-time position available for him with a management company. *See* Doc. 96. The

government claims that DeJesus has failed to establish extraordinary and compelling circumstances because he does not claim to suffer from any medical conditions that would put him at risk of severe illness from COVID-19, his First Step Act arguments are without merit, and he has received some disciplinary infractions while in prison. Doc. 106 at 7–8.

The Court finds that several factors support a finding of extraordinary and compelling reasons: DeJesus' upbringing and youth at the time of the crimes he committed; DeJesus' family circumstances; the disparity between the sentence DeJesus received in 2007 and what he would receive under current law; and his rehabilitation. Post *Brooker*, district courts have discretion to consider several factors, including the severity of a sentence and the defendant's age at the time of his crime. *See Brooker*, 976 F.3d at 238; *United States v. Vargas*, 502 F. Supp. 3d 820, 827–28 (S.D.N.Y. 2020).

*First*, DeJesus' difficult upbringing and youth at the time of his crimes, while duly considered by Judge Pauley at sentencing, are still relevant to the Court's analysis now. Since 2007, when DeJesus was sentenced, the Supreme Court has instructed that "youth matters in sentencing." *United States v. Ramsay*, 538 F. Supp. 3d 407, 410 (S.D.N.Y. 2021) (first quoting *Jones v. Mississippi*, 141 S.Ct. 1307, 1315 (2021); and then citing *id.* at 1316 (Sotomayor, J., dissenting)). DeJesus had an unstable childhood marked by hardship and loss. His father was physically abusive to his mother, before eventually abandoning the family; both of his parents sold drugs; his mother was incarcerated for selling drugs when he was only eight years old and separated from the family for approximately two years; he was drawn towards gang life at the age of 14 because the older men "tread [him] like a little brother"; his brother Nelson was stabbed to death in 2002, and his sister Yolanda died of complications of an autoimmune disease in 2006. *See* Doc. 36-2. DeJesus was 17 when he attempted to sell heroin to an undercover officer, leading to his youthful offender adjudication, and he was between the ages of 19 and 21 when he committed the crimes for which he was convicted. He had just turned 24 when

8

he was convicted. *See Ramsay*, 538 F. Supp. at 423 (courts should consider adolescent cognition at sentencing, including "[a]dolescents' immaturity, their susceptibility to peer influence, and their dependence," and "cannot simply treat anyone over 18 as an 'adult' for sentencing purposes but must inquire whether the [defendant] is still in many respects an adolescent." (citing *Roper v. Simmons*, 543 U.S. 551, 570 (2005))).

Several courts in this Circuit have recently granted compassionate release or sentence reductions pursuant to § 3582 to defendants similar to DeJesus, who had difficult upbringings and committed serious crimes, including heroin trafficking, at a young age, but who have shown, among other mitigating factors, proof of rehabilitation. *See Ramsay*, 538 F. Supp. 3d at 424–25 (granting sentence reduction based on extraordinary and compelling factors including the defendant's youth at the time of his crimes, difficult upbringing, and rehabilitation, where the defendant, at age 17, had followed a gang leader's orders to shoot a rival gang leader, ultimately killing two innocent bystanders); *United States of America v. Ray Anthony Ramirez*, No. 98 Cr. 927 (CM), 2021 WL 5233512, at *1, *5 (S.D.N.Y. Nov. 10, 2021) (granting sentence reduction to defendant who, at 19 years old, was a leader in a drug trafficking organization that distributed large quantities of heroin from 1996–1998 and who participated in two murders); *United States v. Cruz*, No. 94 Cr. 112 (JCH), 2021 WL 1326851, at *15 (D. Conn. Apr. 9, 2021) (granting compassionate release to defendant who joined the Latin Kings gang at age 15 and committed two murders at age 18, based on his age at the time of the crimes, the length of his sentence, his "truly exceptional" rehabilitation, and family circumstances, including his mother's health); *Robles*, 553 F. Supp. 3d at 178–86 (granting motion for sentence reduction, subject to defendant exhausting administrative remedies, where the court found extraordinary and compelling reasons to reduce 32-year mandatory minimum sentence imposed for robberies defendant committed at age 23); *United States v. Glynn*, No. 06 Cr. 580 (JSR), 2022 WL 562652, at *8 (S.D.N.Y. Feb. 24, 2022) (granting sentence reduction to defendant who was a gang

leader and for seven years participated in a drug trafficking organization that distributed hundreds of grams of crack cocaine, and who had been convicted at trial of murder in aid of racketeering, narcotics conspiracy, and use of a firearm, based on his difficult upbringing, youth at the time of the crimes, health concerns, and rehabilitation); *United States v. Millan*, No. 91 Cr. 685 (LAP), 2020 WL 1674058, at *8 (S.D.N.Y. Apr. 6, 2020) (granting compassionate release to defendant convicted at trial of participating in a drug trafficking conspiracy to distribute heroin in the 1980s and 1990s based on extraordinary and compelling reasons, including that defendant was "no longer the immature and irresponsible young man who committed his offenses in his early 20s.")

*Second*, the disparity between the sentence DeJesus received in 2007, including the 20-year mandatory minimum for having a prior drug felony, and the sentence he would likely receive now for the same conduct after passage of the First Step Act, contributes to a finding of extraordinary and compelling circumstances. DeJesus' motion focuses on the changes to sentencing law and mandatory minimums under the First Step Act. *See* Doc. 97. The government agrees that, if DeJesus were sentenced today, he would not face the enhanced mandatory minimum on his conviction for narcotics conspiracy based on his youthful offender adjudication, but argues that the First Step Act has no bearing on this case because the law is not retroactive. Doc. 106 at 4, 7. While the government is correct that the First Step Act's provision amending the mandatory felony drug offense enhancement in Section 841(b)(1)(A) is not retroactive, *see United States v. Bryant*, 991 F.3d 452, 455 (2d Cir. 2021),

> [the First Step Act] also does not prohibit courts presented with compassionate motions under § 3582(c) from considering, among other factors, the vast disparity in sentences imposed on like offenders depending on whether sentencing was before and after the FSA. . . . Put differently, although Congress chose not to make its reduction to the mandatory sentences . . . retroactive, which would have occasioned an avalanche of applications and inevitable re-sentencings for pre-FSA cases, it has not barred district courts from making fact-specific determinations, under the separate relief mechanism of § 3582(c), that individual

10

> defendants have shown, based on the totality of circumstances, extraordinary and compelling reasons justifying a sentence reduction.

*Robles*, 553 F. Supp. 3d at 186 (internal quotation marks and citations omitted). *See also United States v. Johnson*, No. 21-241-CR, 2022 WL 102075, at *1 (2d Cir. Jan. 11, 2022) (noting that the courts of appeals are divided as to whether the passage of the First Step Act could be an extraordinary and compelling reason justifying sentence reduction); *United States v. McCoy*, 981 F.3d 271, 284–85 (4th Cir. 2020) (holding that First Step Act's clarification of sentencing for § 924(c) and "the fact that those sentences would be dramatically shorter today" constituted extraordinary and compelling reasons for relief under § 3582(c)(1)(A)).

Were it not for the prior felony information—which the government agrees was due to a youthful offender adjudication—DeJesus would have been subject to a mandatory minimum sentence of ten years, not the twenty years that mandated by the Guidelines at that time, and he likely would have received a dramatically lower sentence. While the Court does not now decide that this disparity in sentencing is an extraordinary and compelling reason in and of itself, it is relevant to the totality of the circumstances to be considered.

*Third*, DeJesus' rehabilitation and family circumstances are relevant and weigh in favor of finding extraordinary and compelling reasons. While rehabilitation standing alone cannot constitute an extraordinary and compelling reason warranting a sentence reduction, *see, e.g.*, *United States v. Lopez*, No. 10 Cr. 798 (PAC), 2021 WL 2821149, at *3 (S.D.N.Y. July 7, 2021), courts may consider rehabilitation as part of the analysis, *see e.g., United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020). DeJesus recognizes that he has not had a perfect record while incarcerated, but he has introduced compelling evidence of sincere rehabilitation. He has introduced a letter from his BOP correctional counselor, who described him as a "model inmate" who "mentors inmates on a daily basis," is continuously "participating and completing institution programs" to

11

prepare for reentry, and has "an outstanding work performance rating and performs extra duties when needed." Doc. 96 at 3. The letter goes on to state that DeJesus was trusted with developing an anger management program and that he is prepared for positive reentry into society. *Id.* DeJesus has introduced evidence that he has made the best of his time in prison, completing his G.E.D., parenting classes, accounting classes, calligraphy classes, and more. *See id.* at 4–12. He also has introduced evidence of a reentry plan. DeJesus states that he will live with and care for his mother, who is suffering from leukemia, and that he has been offered employment as a maintenance worker for a management company. Doc. 97 at 25–26. He hopes to mentor young people and to share his story as an example of change. *Id.* at 26. In support of this plan, DeJesus has submitted a letter from the management company confirming that it has a full-time position available for DeJesus. Doc. 96 at 13. Particularly given the trauma and losses that DeJesus' family has suffered, the Court finds that his stated desire to care for and support his mother is relevant to the consideration of extraordinary and compelling circumstances. *See, e.g., United States v. John*, No. 15 Cr. 208 (CM), 2020 WL 6581217, at *2 (S.D.N.Y. Nov. 10, 2020) (under *Brooker*, courts may "consider the myriad of family circumstances that might warrant granting compassionate release," and grant compassionate release where those circumstances are extraordinary and compelling beyond the family separation incurred as a matter of course by incarceration).

In sum, the Court finds that DeJesus' youth and upbringing, the disparity in the sentence he received as compared to what he would likely receive now, his rehabilitation, and his family circumstances together constitute extraordinary and compelling circumstances.

### C. The Remaining Section 3553 Factors

The Court next considers the applicable § 3553 factors—the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law,

provide just punishment, afford adequate deterrence, and protect the public. The government argues that these factors counsel against early release. Doc. 106 at 7–8.

There can be no dispute that DeJesus' conduct was incredibly serious, as the government points out. DeJesus agrees, writing that he "heard what the Court said," when Judge Pauley determined that "[t]he crimes herein were extremely grave, and the defendant needs to be punished significantly." Doc. 97 at 3. On the other hand, DeJesus' history and characteristics, described in detail above, do counsel in favor of compassion. DeJesus had a chaotic and harsh childhood. He dropped out of school after eighth grade and gravitated towards gangs who provided acceptance and treated him like family. *See* Doc. 36-2. Moreover, the evidence supports that he has taken the opportunities available to him not only for self-improvement but also to serve as a mentor for others.

The Court finds that serving an additional ten years beyond the over sixteen years that DeJesus has already been incarcerated would do little to further the goals behind incarceration. The government claims that the need for deterrence mandates denying the instant motion. Doc. 106 at 8. But sixteen years ago, in 2006, the government offered DeJesus a five-year plea deal, 2017 WL 6343678, at *4—one-sixth of the amount of time it now maintains is necessary—indicating that it then considered five years to be reasonable sentence that would "fulfill legitimate penological goals."[3] *Garcia v. Herbert*, No. 02 Civ. 02052 (JBW), 2018 WL 6272778, at *37 (E.D.N.Y. Nov. 30, 2018) ("If [the plea offer of] 20 years could be said to fulfill legitimate penological goals (deterrence, incapacitation, retribution, and rehabilitation), then this sentence six times its promised length is excessive.").

---

[3] The government argues that DeJesus' "discredited testimony in connection with his 2255 motion" also counsels against release. Doc. 106 at 8. Indeed, Judge Pauley did not credit DeJesus' testimony that his trial counsel had not informed him about the plea deal over his then-counsel's conflicting testimony. However, Judge Pauley did not specifically find that DeJesus had given false testimony. *See* 2017 WL 6343678. DeJesus may have had a motive to give self-serving testimony. On the other hand, the conflicting testimony could also have been a result of lapses in memory or for another reason.

13

DeJesus is now 39 years old.  He has been in federal custody since he was at least 23.  For the harm that he caused the community, DeJesus has spent over sixteen years incarcerated—all of his youth and a large portion of his adulthood.  He evidently recognizes the damage he has done to society, his community, and to his family, and the record supports that he has sincerely rehabilitated himself.  That is enough.

### IV.     CONCLUSION

For the reasons stated above, DeJesus' motion for compassionate release is GRANTED.  DeJesus' previously imposed prison sentence is hereby reduced to time served.  The Court also stays this order for fourteen days to allow the BOP to develop a release plan and make any necessary arrangements for DeJesus' release.  Following his release, DeJesus shall begin his ten-year term of supervised release subject to the conditions set forth in the October 12, 2007 judgment.  Doc. 43.  An order setting forth the conditions of release shall issue separately.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 97, 99, and 104, and to mail a copy of this order to DeJesus.

It is SO ORDERED.

Dated:   April 19, 2022
         New York, New York

Edgardo Ramos, U.S.D.J.